## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMERICAN BANK AND TRUST CO., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 06-CV-0317-CVE-FMH** |
| | ) | |
| BOND INTERNATIONAL LIMITED, | ) | |
| BOND INTERNATIONAL (US) INC., | ) | |
| BOND INTERNATIONAL (U.K.) LIMTED, | ) | |
| DAVID K. BOND and AKKEL | ) | |
| HOLDINGS LIMITED, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Plaintiff American Bank and Trust Co.'s Combined Motion for

Partial Summary Judgment and Brief in Support (Dkt. # 49).  Plaintiff seeks summary judgment on

its claims for breach of contract, breach of promissory note, breach of guaranty against Akkel

Holdings Limited, and foreclosure.  However, plaintiff does not seek foreclosure of its interests in

collateral or proceeds from collateral leased to Havana Club International, S.A. ("Havana Club")

or summary judgment on its claim for breach of guaranty against David K. Bond.

## I.

American Bank & Trust Company ("American") entered into a loan agreement with Bond

International Limited ("Bond BVI"), Bond International (U.K.) Limited ("Bond UK"), Bond

International (U.S.) Inc. ("Bond US") (collectively "Borrowers" or "defendants"), and Akkel

Holdings Limited ("Akkel").  On March 23, 1999, the parties executed a credit agreement for a $25

million loan from American to Borrowers.  On the same day, Borrowers signed a promissory note

in favor of American for any principal borrowed pursuant to the Credit Agreement.  Borrowers

agreed to repay the full balance of the loan by April 5, 2002.  The parties periodically amended the credit greement and the promissory note to extend the time for repayment.  The most recent amendment was executed by the parties on January 3, 2006.  According to the January 3, 2006 amendment, Borrowers were required to repay the full amount of the loan no later than April 4, 2006.  David K. Bond[1] and Akkel executed guarantees for the full balance of the loan from American.  Akkel also executed a Share Pledge Agreement granting American a security interest in shares of Bond BVI.

As part of the loan documents, American and Borrowers executed a security agreement granting American a security interest in a wide range of collateral owned by Borrowers.  The collateral included intermodal tanks, containers and chassis leased to Borrowers' customers, and proceeds from those leases.[2]  American perfected its security interests in the collateral through various methods, including filing financing statements, taking possession of certificates of title, and registering the security agreement with foreign governments where the collateral was located.[3]  The security agreement gave American a security interest in intermodal tanks leased to the Havana Club, as well as a security interest in proceeds of the leases.  Havana Club is based in Cuba and is partially owned by the Cuban government.  For purposes of this motion for summary judgment, American

---

[1]   David K. Bond is the president and chief executive officer of Bond BVI. He is also the president of Bond US, and the chairman and managing director of Bond UK.

[2]   Although the primary type of collateral was intermodal tanks and proceeds from lease of those tanks, American also claimed a security interest in trademarks, office equipment, computer data, business records, furniture, stock interests, and other types of collateral.

[3]   The validity of American's security interests and the procedures used to perfect its security interests have not been disputed by defendants.

is not seeking to foreclose on any security interests in collateral or proceeds from collateral related to defendants' business dealings with Havana Club.

The Borrowers failed to pay off their debt by April 4, 2006, and American claims they are in default. American requested that Akkel honor its guaranty to pay the outstanding balance on the loan, but Akkel refused.[4]  As of September 25, 2006, the Borrowers owed American $22,125,111 and $1,507,273.[5]  On August 17, 2006, the Court appointed R. Dobie Langenkamp to serve as a receiver in this case to protect American's security interests until the case is resolved.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Kaul v. Stephan,

---

[4]     Defendant David K. Bond personally executed a guarantee, but American is not seeking summary judgment on its claim for breach of guarantee against him at this time. Dkt. # 49, at 1.

[5]     The total amount of default, at the time American filed this motion, was $23,632,384. American claims that interest is accruing daily at a floating interest rate set out in the credit agreement.

3

83 F.3d 1208, 1212 (10th Cir. 1996).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendants make a legal argument that the loan agreement is void because American knowingly accepted a security interest in violation of the Trading with the Enemy Act, 50 U.S.C. App. § 1, et seq. ("TWEA") and the Cuban Asset Control Regulations, 31 C.F.R. § 515.101 et seq. ("CACR").  However, defendants raise no other arguments in opposition to plaintiff's motion for summary judgment.  In response to plaintiff's motion for summary judgment, defendants have not

raised any genuine issue of material fact.[6]  Plaintiff claims that the Court has already ruled on these legal issues, and should not reconsider its decision in the context of summary judgment.

The Court previously issued an opinion and order on the TWEA and CACR issues, but defendants claim that this did not dispose of their objections concerning the validity of the loan documents under federal trade regulations.  <u>See</u> Dkt. # 36.  After reviewing case law construing the CACR, the Court held that it did not have authority to appoint a receiver over any collateral in the hands of the Havana Club.  However, the Court did not invalidate the loan documents on the ground that American sought to obtain a security interest in collateral held by a Cuban company.  In fact, the credit agreement expressly provides that any unenforceable or invalid provision of the loan documents should be severed from the rest of the agreement:

> 8.5. Invalid Provision.  If any provision in any Loan Document is held to be illegal, invalid, or unenforceable, such provision shall be fully severable; the appropriate Loan Document shall be construed and enforced as if such provision had never comprised a part thereof; and the remaining provisions thereof shall remain in full force and effect and shall not be affected by such an provision or by its severance therefrom.  AMERICAN, and each Borrower party to such Loan Document agree to negotiate, in good faith, the terms of a replacement provision as similar to the severed provision as may be possible and be legal, valid, and enforceable.

Dkt. # 1, Ex. A, at 26.  The Court appointed a receiver to safeguard all collateral included in the loan documents except intermodal tanks and proceeds from leases to the Havana Club.

Defendants' argument that the CACR requires the Court to invalidate the entire loan agreement has already been considered, and defendants do not offer any new legal authority to

---

[6]     Defendants assert that the Court did not rule on the merits of their defense under the TWEA or CACR.  However, this legal argument does not raise a genuine issue of material fact, nor do defendants dispute plaintiff's statement of undisputed facts in the body of their response.  Defendant's objection is a legal argument that will be considered by the Court, but it does not create a genuine issue of material fact under Fed. R. Civ. P. 56.

support this argument.  The principal purpose of the CACR "was to deny Cuba access to American dollars which finance acts of aggression or subversion." <u>Dean Witter Reynolds, Inc. v. Fernandez</u>, 741 F.2d 355, 361 (11th Cir. 1984).  Defendants characterize the entire loan agreement as a transfer that is void under the CACR.  <u>See</u> 31 C.F.R. § 515.203(a) ("Any transfer after the 'effective date' which is in violation of any provision of this part or any regulation, ruling, instruction, license, or other direction or authorization thereunder and involves any property in which a designated national has or has had an interest since such 'effective date' is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power or privilege with respect to such property.").

The CACR does not provide specific guidance concerning the enforceability of a contract if a specific contractual provision is held to be invalid, so the Court will refer to state contract law on the severability of an unenforceable provision.  Oklahoma law provides that a contract provision is severable if the provision is not an essential part of the agreement and the remainder of the contract can still be enforced.  <u>City of Bixby v. State ex rel. Dept. of Labor</u>, 934 P.2d 364 (Okla. Civ. App. 1996).  The key factor in determining whether a contract provision is severable is the intent of the parties.  <u>Sunrizon Homes, Inc. v. American Guar. Inv. Corp.</u>, 782 P.2d 103, 107 (Okla. 1988).  The clear intent of the parties was to sever any provision that was later found to be unforceable, as evidenced by the severance provision contained in the credit agreement.  <u>See</u> Dkt. # 1, Ex. A, at 26. In addition, American's security interest in property leased to the Havana Club is not an essential part of the agreement, and, should the Court prevent American from enforcing its security interest against Havana Club, the principal parts of the loan agreement will still be intact. The purpose of the CACR was to prevent American funds from flowing to Cuban nationals, but the

6

defendants have not shown that the CACR requires the Court to strike the entire loan agreement to further this purpose.  Therefore, the Court will not declare the entire loan agreement invalid under the CACR, because American's security interest in tanks leased to Havana Club is severable from the rest of the contract.

Defendants also argue that the loan documents as a whole are unenforceable, because plaintiff may not seek judicial intervention to enforce any part of an illegal contract.  Plaintiff asserts that it did not engage in any illegal trading and that it simply obtained a security interest in collateral leased to a Cuban company.  Plaintiff cites the Court's prior Opinion and Order (Dkt. # 36), where the Court held that any unenforceable provisions are severable from the rest of the loan agreement, so that even if American's security interest in leases to the Havana Club are illegal under the CACR, the remainder of the loan agreement is enforceable.

Oklahoma law is clear that courts may not enforce or aid in the enforcement of illegal contracts.  An-Cor, Inc. v. Reherman, 835 P.2d 93, 96 (Okla. 1992); Nunneley v. Farmers Ins. Exchange, 564 P.2d 231 (Okla. 1977); Tatum v. Colonial Life & Acc. Ins. Co. of America, 465 P.2d 448, 450 (Okla. 1970).  If a contract is declared void for illegality, neither party can rely on the contract to seek relief from the Court.  Neil v. Pennsylvania Life Ins. Co., 474 P.2d 961, 963 (Okla. 1970).  However, if the illegal contract relates to a collateral matter only and the plaintiff does not need to rely on the illegal contract to recover, the plaintiff may still recover under the contract.  Thomas v. Owens, 241 P.2d 1114, 1117 (Okla. 1952).  Courts may enforce a contract, even if it is found to be illegal, if all of the parties entered the contract "with knowledge of the facts which, if known to both of the parties, would have rendered the contract illegal and void."  Goodwin v. State ex rel. Crandall, 31 P.2d 841, 842-43 (Okla. 1934).

7

Under the CACR, there is nothing illegal about the collateral except that it was delivered to a Cuban corporation.  The Court has already found this portion of the contract can be severed without rendering the entire contract unenforceable.  Even if American's security interest in Havana Club's tanks were not severable, it would not be appropriate to invoke the doctrine of illegality under these facts.  In this case, defendants leased intermodal tanks and chassis to Havana Club and granted American a security interest in that property.  Defendants were the principal actors in any violation of the CACR, and, even if American was aware of potential legal problems, the Court will not invoke its equitable powers to protect a party that participated in the illegality of which it complains.  See Sender v. Simon, 84 F.3d 1299 (10th Cir. 1996) (the purpose of voiding an illegal contract is to prevent a party that participated in illegal conduct from obtaining a benefit); Fairbanks, Morse & Co. v. City of Wagoner, 86 F.2d 288, 292 (10th Cir. 1936) (court is not enforcing an illegal contract when it prevents defendant from retaining any unjust benefit from its own illegal actions).  The Court will not void the loan agreement as an illegal contract, because defendant was the primary participant in any illegality.

## IV.

The undisputed material facts set forth in plaintiff's motion show that American is entitled to summary judgment on its claims for breach of contract, breach of promissory note, breach of guaranty against Akkel, and foreclosure.  It is undisputed that defendants signed a credit agreement for a loan of $25 million from American, and that American is the holder of a promissory note executed by defendants obligating them to repay the full amount of the loan.[7]  The loan was also

---

[7]     The parties have amended the credit agreement and promissory note 16 times, the most recent of which occurred on January 3, 2006.  Under the most recent version, defendants were in default on the loan if the principal and interest were not repaid by April 4, 2006.

8

secured by a security agreement granting American security interests in defendants' property. Akkel executed a guarantee for the full amount of the loan in the event that the borrowers defaulted on the loan. Defendants failed to repay the loan by April 4, 2006, as required by the sixteenth amendment to the promissory note and credit agreement. Defendants do not dispute that they defaulted on the loan and that, as of September 25, 2006, they owed plaintiff $23,632,384 to pay off the principal and interest. It is also undisputed that Akkel failed to honor its guarantee of the loan. Since defendants' objections to enforcement of the loan agreement have been rejected, plaintiff has established that summary judgment is appropriate on its claims for breach of contract (Count 1), breach of promissory note (Count 2), breach of guaranty against Akkel (Count 3), and foreclosure (Count 4).

**IT IS THEREFORE ORDERED** that Plaintiff American Bank and Trust Co.'s Combined Motion for Partial Summary Judgment and Brief in Support (Dkt. # 49) is **granted**.

**DATED** this 29th day of November, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT