UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMERICAN BANK AND TRUST CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-CV-0317-CVE-FHM |
| ) | |
| BOND INTERNATIONAL LIMITED, ) | |
| BOND INTERNATIONAL (US) INC., ) | |
| BOND INTERNATIONAL (U.K.) LIMITED, ) | |
| DAVID K. BOND and AKKEL ) | |
| HOLDINGS LIMITED, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is Plaintiff American Bank and Trust Co.'s Combined Motion for Summary Judgment on David K. Bond's Personal Guaranty and Brief in Support (Dkt. # 74). The sole remaining claim in this case is plaintiff's claim for breach of guaranty against David K. Bond ("Bond"). Bond raises two defenses to plaintiff's motion for summary judgment: (1) the parties agreed that the guaranty would not be enforced absent malfeasance by Bond; and (2) the guaranty is unenforceable under the Trading with the Enemy Act, 50 U.S.C. App. § 1, et seq. ("TWEA"), and the Cuban Assets Control Regulations, 31 C.F.R. § 515.101 et seq. ("CACR").

**I.**

On March 23, 1999, American Bank and Trust Co. ("American") entered into written agreements for a $25 million secured loan to Bond International Limited ("Bond BVI"), Bond International (U.K.) Limited ("Bond UK"), and Bond International (US) Inc. ("Bond US") (collectively referred to as "Borrowers"). Borrowers executed a promissory note and credit

agreement in favor of American, promising to repay the full amount of the loan with interest and granting American security interests in collateral held by Borrowers.[1]

Before the loan documents were executed, American approached Bond[2] about signing a personal guaranty in connection with the loan. The loan officer responsible for this loan, Connie L. Jemison, orally offered Bond a 0.25% reduction in the interest rate on the loan if he agreed to execute a personal guaranty. Bond preferred to have a lower interest rate on the loan, but expressed reservations about the need for a personal guaranty. Bond asked Frank Henke ("Henke"), a representative of American, why the guaranty was necessary, and Henke allegedly told Bond the guaranty was intended to keep Bond on the "straight and narrow." Dkt. # 74, Ex. 1, at 76, l. 5-6. On February 2, 1999, American sent Bond a term sheet describing the proposed loan and included the 0.25% interest rate reduction for the personal guaranty. Bond signed the term sheet and returned it to American. Bond executed the personal guaranty on March 23, 2003 and accepted a 0.25% reduction in the interest rate on the loan.

The guaranty states that "[Bond] does hereby unconditionally and irrevocably agree that if any of the Obligations (as hereinafter defined) are not satisfied when due," American had the right to proceed against Bond to recover the principal and interest of the loan. Dkt. # 2, Ex. I, at ¶ 1.1. American reserved the right to file a legal action against Bond without first proceeding against Borrowers. Bond agreed that the guaranty would be enforceable against him "irrespective of . . .

---

[1] The original promissory note and credit agreement have been amended 16 times since March 23, 1999. However, the amendments do not have any effect on the issues raised in American's motion for summary judgment and will not be discussed.

[2] Bond is the president and chief executive officer of Bond BVI, as well as the president of Bond US and the chairman and managing director of Bond UK. He is also a barrister and serves as the legal advisor for Borrowers.

the genuineness, validity, regularity, or enforceability of the Obligations or of the Loan Documents . . . ." Id. at ¶ 1.3.  American and Borrowers intended for the agreement to represent the complete agreement between the parties:

> **Entire Agreement.**  This Guaranty embodies the entire agreement between BOND and AMERICAN with respect to the guaranty established herein, and there are no other written or oral agreements existing between BOND and AMERICAN with respect to the guaranty created herein which are not expressly set forth in this Guaranty.

Id. at ¶ 5.5.

Bond claims that he understood that the guaranty would be enforced only if he committed material malfeasance or misappropriated significant collateral for his personal use.  However, he did not discuss his interpretation of the guaranty with a representative of American before it was executed.  The "straight and narrow" language was not expressly used in the guaranty, nor is there any condition precedent to enforcement stated in the guaranty other than Borrowers' default.  The parties do not dispute that Borrowers have defaulted under the loan agreement, and the Bond has refused to honor the guaranty.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

American argues that it is entitled to summary judgment on its claim for breach of guaranty against Bond, because Borrowers have defaulted on the loan and Bond does not have a valid defense precluding enforcement of the guaranty. Bond argues that Henke's statement that the guaranty was necessary to keep Bond on the "straight and narrow" creates a condition precedent before the

4

guaranty can be enforced, and he claims that this condition precedent has not been satisfied. American claims that the alleged oral agreement, even if it was made, does not preclude enforcement of the guaranty, because Henke's statement is not admissible under the parol evidence rule. Bond also argues that the loan documents, including the guaranty, are void under the TWEA and the CACR. However this argument has addressed in three previous opinions and orders by this Court. See Dkt. ## 36, 62, 73. Defendants have not submitted new evidence or legal authority in support of this argument, and the Court will not reconsider its decision that the TWEA and the CACR do not invalidate the loan documents.[3] When ruling on this motion for summary judgment, the only legal issue before the Court is the effect, if any, of Henke's statement that the guaranty would be enforced only if Bond strayed from the "straight and narrow."

Although the admissibility of evidence in a diversity case is ordinarily determined by reference to federal procedural law, "it is well recognized that Congress did not intend the procedural rules to preempt the so-called 'substantive' state rules of evidence, such as the parol evidence rule . . . ." Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998). Therefore, the Court will refer to Oklahoma law concerning the applicability of the parol evidence rule. Under the parol evidence rule, "pre-contract negotiations and oral discussions are merged into and superseded by the terms of an executed writing." First Nat'l Bank in Durant v. Honey Creek Entertainment Corp., 54 P.3d 100, 103 (Okla. 2002); see also Okla Stat. tit. 15, § 137 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or

---

[3] Even if the Court found that the loan documents were invalid under the TWEA and the CACR, American could still proceed with its claim for breach of guaranty against Bond. As the Court has noted, the guaranty is enforceable against Bond regardless of "the genuineness, validity, regularity, or enforceability" of the loan documents. Dkt. # 2, Ex. I, at ¶ 1.3.

5

stipulations concerning its matter, which preceded or accompanied the execution of the instrument."). Parol evidence is admissible in cases when the contract contains a latent ambiguity. Dismuke v. Cash, 830 P.2d 188, 190 (Okla. 1992). However, when the "language of a written contract is complete, unambiguous and free from uncertainty as to the parties' intentions, parol evidence of prior representations, contemporaneous agreements or understandings tending to change, contradict, or enlarge the plain terms of the written contract are inadmissible." Coulter v. Carewell Corp. of Oklahoma, 21 P.3d 1078, 1084 (Okla. Civ. App. 2001) (quoting First Nat'l Bank & Trust Co. of Vinita v. Kissee, 859 P.2d 502, 506-07 (Okla. 1993)).

The Oklahoma Supreme Court has directly addressed the parol evidence rule in the context of a breach of guaranty claim by a bank against a guarantor. In First National Bank and Trust Co. of Vinita v. Kissee, 859 P.2d 502 (Okla. 1993), the bank, First National Bank and Trust Co. of Vinita ("First National") filed suit against Jack Kissee ("guarantor") to collect $125,000 because of the guarantor's alleged breach of a guaranty. Id. at 504. The guarantor argued that he was fraudulently induced to sign the guaranty based on the statement of First National's president that the guaranty would not be enforced against him.[4] The Oklahoma Supreme Court refused to consider this evidence, because the guaranty was facially unambiguous and the guaranty represented the complete agreement between the parties. The guaranty provided that the guarantor absolutely and unconditionally agreed to pay the subject debt in the event that the debtor defaulted, and no condition precedent to enforcement was stated in the guaranty. In the context of guaranty agreements, "the language used therein is construed most strongly against the guarantor," and courts

---

[4] The evidence showed that guarantor's brother, Darrell Kissee, made a statement in front of the bank president concerning the enforceability of the guaranty, and the bank president did not negate the statement. Id. at 506.

should not presume that a guarantor was fraudulently induced to enter the agreement. Id. at 507. The guarantor must produce clear and convincing evidence of fraud prior to or contemporaneously with the execution of the guaranty, or conditions excluded from the final written version of the guaranty are not enforceable. Id. The Oklahoma Supreme Court emphasized that a written guaranty is "deemed unconditional" unless a condition precedent to enforcement is expressly stated in the document. Id. (citing Abbot v. Nat'l Bank of Commerce of Tulsa, 56 P.2d 886 (1936)). The court upheld summary judgment in favor of the bank on its claim for breach of guaranty.

In this case, it is apparent from the face of the guaranty that the parties intended for it to express the complete agreement. As the Court has noted above, the guaranty contains a provision stating that the guaranty "embodies the entire agreement" between American and Borrowers. Dkt. # 2, Ex. I, at ¶ 5.5. This type of provision is sufficient to demonstrate that the parties intended for the contract to represent the complete agreement, and parol evidence should be admitted only if there is a valid exception to the parol evidence rule. Dave Markley Ford, Inc. v. Lair, 565 P.2d 671, 673 (Okla. 1977); Southwestern Bell Media, Inc. v. Eden, 848 P.2d 584, 585 (Okla. Civ. App. 1993). Bond's only defense is based on oral statement by an American employee that allegedly created a condition precedent to enforcement of the guaranty, but that condition was not included in the final written version of the guaranty. In order for the Court to consider Henke's statement, Bond has the burden to prove an exception to the parol evidence rule. First National Bank & Trust Co. of Vinita, 859 P.2d at 506-07.

Bond does not specifically mention the parol evidence rule in his response, but he does cite First National Bank in Durant.[5] 54 P.3d 100. In that case, First National Bank in Durant ("First National Bank") filed a lawsuit to recover an unpaid loan from Honey Creek Entertainment Corp. ("Honey Creek") and to recover for breach of guaranty against the owners of the company. Each of Honey Creek's owners had executed a personal guaranty at the time the loan was finalized. However, Lena L. Clancy ("Clancy"), one of the owners of Honey Creek, had a long time business and personal relationship with the president of First National Bank, Alan Dufur. Id. at 104. During the six months preceeding execution of the loan, Dufur repeatedly assured Clancy that she would never be personally responsible for more than one-third of the loan. Clancy discussed her concerns about the guaranty with Dufur, and she told Dufur that she would not sign the guaranty if she could be held completely responsible for Honey Creek's debt. Dufur told her that the bank would not attempt to collect more than one-third of the loan from Clancy, and she signed the guaranty. When First National Bank sued Clancy for the full amount of the debt, the trial court permitted her to introduce Dufur's statements about the limitation of her liability under the guaranty. The Oklahoma Supreme Court affirmed this decision, because the statements were relevant to Clancy's defense that she was fraudulently induced to execute the guaranty. The court focused on the number of statements by Dufur, as well as Clancy and Dufur's close personal relationship, when it found that this evidence should have been admitted. Id. at 104-05.

Bond has not shown that First National Bank in Durant is applicable to this case. In that case, both parties discussed their understanding of the guaranty, and the bank made a specific

---

[5]  Although Bond cites First National Bank in Durant, he does not provide any analysis showing that it applies to the facts of this case.

8

representation that the guaranty would not be enforced against Clancy for more than one-third of the debt. In the present case, Henke made a vague statement that the guaranty was necessary to keep Bond on the "straight and narrow." Bond understood this to mean that he had to commit malfeasance before the guaranty would be enforced, but he did not discuss this interpretation of Henke's statement with American. This is clearly distinguishable from First National Bank in Durant, where a key factor in the Oklahoma Supreme Court's decision to permit the introduction of parol evidence was the repeated and specific nature of the discussions between both parties to the guaranty. Id. Bond has not shown that First National Bank in Durant applies to this case and, absent some other exception to the parol evidence rule, Henke's statement should not be considered when the Court rules on American's motion for summary judgment.

The Court finds that the guaranty is clear and unambiguous on its face that it represents the complete agreement of the parties and, absent an exception to the parol evidence rule, evidence of oral statements preceding the execution of the contract should not be considered. Bond has not shown that an exception to the rule applies in this case, and the Court will not consider evidence outside of the four corners of the document when determining the parties' obligations under the guaranty. Shawnee Hosp. Authority v. Dow Const., Inc., 812 P.2d 1351, 1354 n.15 (Okla. 1990). Bond has not stated a legitimate defense to the enforcement of the guaranty and, if the condition precedent of default has been satisfied, the guaranty should be enforced. The undisputed facts show that Borrowers have defaulted, evidenced by the fact that the Court has already entered summary judgment against Borrowers for breach of contract under the loan agreement. Dkt. # 62. The Court will not presume that Bond was fraudulently induced to sign the guaranty, as he has not offered any

9

evidence of fraud.[6]  See First Nat'l Bank & Trust Co. of Vinita, 859 P.2d at 507.  On its face, the guaranty is enforceable and the condition precedent for enforcement, Borrowers' default has been satisfied.  Therefore, summary judgment should be granted on American's claim for breach of guaranty against Bond.

**IT IS THEREFORE ORDERED** that Plaintiff American Bank and Trust Co.'s Combined Motion for Summary Judgment on David K. Bond's Personal Guaranty and Brief in Support (Dkt. # 74) is **granted**.  Counsel for plaintiff shall submit a proposed judgment as to all claims, approved as to form by counsel for defendants, to the CM/ECF Intake Box as a Word Perfect document not in .pdf format, no later than **March 12, 2007**.

**DATED** this 5th day of March, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6]  American raised this issue in its motion for summary judgment under the assumption that Bond would attempt to argue fraud as a basis for the admission of parol evidence.  As Bond has not raised this argument in his response, the Court will not address this issue.